UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 13-CV-3315 (JFB)

———————————

TERRANCE BARLOW,

Petitioner,

VERSUS

UNITED STATES OF AMERICA,

Respondent.

———————————

**MEMORANDUM AND ORDER**
April 8, 2014

———————————

JOSEPH F. BIANCO, District Judge:

Petitioner Terrance Barlow ("Barlow" or "petitioner") moves, pursuant to 28 U.S.C. § 2255, for an order vacating his November 23, 2010 judgment of conviction. In the alternative, Barlow requests an evidentiary hearing on the issues raised in the motion. Barlow asserts that his trial counsel provided ineffective assistance by (1) failing to request a mistrial after the mid-trial discovery of exculpatory testimony, and (2) entering into a stipulation with the government with respect to testimony about the location where the ammunition Barlow was charged with possessing was manufactured. For the reasons set forth below, the Court denies the motion its entirety and without an evidentiary hearing. It is evident from the face of the motion and the prior proceedings, including the direct appeal of Barlow's conviction, that Barlow is not entitled to relief.

I. BACKGROUND

On October 20, 2009, a jury convicted petitioner of being a felon in possession of ammunition in and affecting interstate commerce, in violation of 18 U.S.C. § 922(g). On November 20, 2009, Barlow moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure on three grounds: (1) the jury's verdict was against the weight of the evidence; (2) the prosecution violated its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory and impeachment evidence in its possession; and (3) Barlow's Sixth Amendment right to a jury draw from a fair cross-section of the community was violated. On August 5, 2010, this Court denied that motion in its entirety. *United States v. Barlow*, 732 F. Supp. 2d 1 (E.D.N.Y. 2010) [hereinafter *Barlow I*]. On November 23, 2010, the Court sentenced Barlow to 72 months imprisonment, 3 years supervised release, and a $100 special assessment. On May 3, 2012, the Second

Circuit affirmed the conviction. *United States v. Barlow*, 479 F. App'x 372 (2d Cir. 2012) [hereinafter *Barlow II*]. Barlow filed a petition for writ of certiorari, which the Supreme Court summarily denied on November 26, 2012. *Barlow v. United States*, 133 S. Ct. 672 (2012).

Barlow's present motion largely is copy-and-pasted from his post-conviction motion and direct appeal. For the sake of brevity, the Court refers the parties to the recitation of the underlying facts and issues in *Barlow I*, and only briefly summarizes relevant facts below. Barlow filed the instant motion on June 4, 2013. The government opposed on October 24, 2013. Barlow did not reply.

A.   The Trial

The New York City Police ("NYPD") arrested Barlow on July 16, 2009. He was subsequently transferred to federal custody and indicted on August 18, 2009, on one count of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g). 18 U.S.C. § 922(g) has three elements: (1) the knowing possession of ammunition; (2) a prior felony conviction; and (3) the possession "being in or affecting" interstate commerce. *United States v. Amante*, 418 F.3d 220, 221 n.1 (2d Cir. 2005); *see also* 18 U.S.C. § 922(g). Trial began on October 13, 2009, after Barlow refused to waive speedy trial time.

In *Barlow I*, the Court held that the guilty verdict on the felon-in-possession of ammunition charge was not against the weight of the evidence. The government presented, *inter alia*, the following evidence to the jury: (1) the eyewitness testimony of Police Officer John Serdaros and Sergeant Vassilios Aidiniou that the loaded gun fell from Barlow's waistband during a brief struggle between Barlow and Officer Serdaros as they attempted to stop Barlow in response to a burglary in progress on July 16, 2009; (2) the testimony that the defendant orally confessed to Officer Serdaros that he possessed the firearm and then confessed, in writing, to Detective Roland Garcia that he possessed the gun in connection with the attempted burglary/robbery; and (3) a defense stipulation that the ammunition recovered from the firearm had been transported in interstate commerce and that the defendant had been convicted of a felony prior to July 16, 2009. Jermaine Jackson and Delon Joseph testified for Barlow. Jackson testified that while speaking with Serdaros at the scene, he "caught a glimpse" of an officer—not Serdaros—retrieving a gun from a heavyset individual, not Barlow. Joseph testified that Barlow was not the "big dude" upon whom the officers discovered the gun.

The Court concluded that the testimony of Jackson and Joseph, when considered in light of the entire trial record, did not support the conclusion that the verdict was against the weight of the evidence such that a new trial was required. There was more than sufficient basis, in light of the entire trial record, for the jury to rationally reject the testimony of the defense witnesses and, instead, credit the police testimony that the gun and ammunition belonged to Barlow. Although Barlow argued that the jury should have accepted the testimony of the defense witnesses over the police officers, Barlow had failed to demonstrate the "exceptional circumstances" that are required before a court will disturb the jury's credibility assessments, nor had he demonstrated that it would be a manifest injustice to let the jury's verdict stand. Based upon the government's cross-examination of the two defense witnesses, as well as the other proof at trial, the Court concluded that the jury could have rationally concluded that the defense witnesses' testimony should be rejected, *inter alia*, because they were not in a position to observe the defendant's arrest

or because the testimony was based upon an honest, but erroneous, perception that the firearm was recovered from a second individual arrested on the street (an erroneous perception that may have been caused by Officer Serdaros assisting in the arrest of the second individual while he was still holding the gun that had fallen from defendant's waistband in his hand).

B. Interstate Commerce Stipulation

The parties stipulated that (1) Barlow had been convicted of a felony before July 16, 2009; (2) a police officer in the NYPD's Firearms Analysis Section would, if called to testify, testify that he received a .45 caliber Remington semi-automatic firearm and seven rounds of ammunition from Serdaros for ballistics testing on July 18, 2009, and that the rounds were made by an ammunition manufacturer named Federal Ammunition; and (3) an ATF agent, if called to testify, would testify that ammunition from Federal Ammunition is manufactured outside of New York and, therefore, had traveled in interstate commerce before July 16, 2009. (Motion, Docket No. 1, at 32–34.)

Barlow now argues that his conviction should be vacated because his trial counsel rendered ineffective assistance by agreeing to this stipulation without Barlow's knowledge or permission. Barlow also claims that the government had the burden to prove the interstate commerce element and that the stipulation was insufficient to carry that burden.

C. Purported *Brady* Violations

In *Barlow I*, the Court rejected Barlow's claim that purported *Brady* violations by the government, all related to Jackson and Joseph, warranted a new trial. The Court reasoned, as a threshold matter, that Barlow had failed to produce any evidence that the government possessed evidence favorable to the defense prior to trial or violated its discovery obligations in any way. The Court also concluded that Barlow was not prejudiced by any purported late disclosure of exculpatory information during trial because (1) the government served subpoenas on the witnesses who were (and are) the focus of Barlow's *Brady* argument, (2) the witnesses in question in fact testified for Barlow at trial and the jury heard and fully considered the exculpatory information, and (3) any purported late disclosure did not result in any material shift in Barlow's trial strategy. The Court found that, by calling these defense witnesses, Barlow's counsel was fully able to present the allegedly exculpatory information to the jury in the best possible light for the defendant. Furthermore, upon learning during the trial of the anticipated exculpatory testimony of these two witnesses, Barlow's counsel did not request an adjournment of the trial (or a mistrial) because of any purported prejudice prompted by the timing of the discovery of the information. Therefore, the Court held that no "suppression" of exculpatory information occurred within the meaning of *Brady* because of any purported late disclosure. The Court also reasoned that, in any event, even if Barlow could have shown that the government suppressed exculpatory evidence, he could not possibly have shown the requisite resulting prejudice under the circumstances of this case because Barlow had full and effective use of the exculpatory evidence at trial. The Court also found meritless Barlow's assertion that the prosecution failed to disclose potential impeachment evidence relating to a prosecution witness. Therefore, the Court held that Barlow was not entitled to a new trial because of the prosecution's alleged belated disclosure or non-disclosure of exculpatory or impeachment evidence.

3

## II. LEGAL STANDARD

### A. Section 2255 Petition

Pursuant to 28 U.S.C. § 2255, a prisoner sentenced in federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when the petitioner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). With respect to ineffective assistance of counsel claims under § 2255, the Supreme Court has stated that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

With respect to the issue of an evidentiary hearing, Section 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing Section 2255 Proceedings also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. foll. § 2255. On this issue, the Second Circuit has made clear that "[t]o warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). The Second Circuit has set forth detailed guidance on how a district court should determine whether a hearing is necessary. *See id.* at 213–15. In particular, the Court noted that, given the absence of pre-motion discovery in a Section 2255 case, "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases or seek a discovery order from the court under Rule 6 of the Rules Governing Section 2255 Proceedings." *Id*. at 213–14.

In the instant case, applying the above-referenced standard, the Court concludes that an evidentiary hearing is unnecessary because petitioner's motion and the record of this case conclusively demonstrate that he is entitled to no relief under § 2255. With respect to the first ineffective of assistance of counsel claim—the failure of his attorney to move for a mistrial during the trial—that claim is not based on any facts outside the record and is meritless in light of the Court's ruling in *Barlow I* and petitioner's failure to show any prejudice. With respect to the second claim—entering into the stipulation—the Court concludes that it is equally meritless, even accepting petitioner's contention that he did not know about or approve the stipulation before it was entered into by his trial counsel and the government, because it was not objectively unreasonable for counsel to enter into the stipulation in light of the defense at trial, nor is there any evidence suggesting that not entering into the stipulation would have changed the outcome of the trial. Thus, even if petitioner's unsupported factual assertions were true, they would not present a plausible claim of ineffective assistance of counsel. Accordingly, an evidentiary hearing on any of petitioner's claims is unwarranted.

4

B. Ineffective Assistance of Trial Counsel

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id*. at 588 (quoting *Strickland*, 466 U.S. at 690-91). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690–91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "'undermine[] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F. 3d 84, 91 (2d Cir. 2007) (internal citation and quotation marks omitted).

This Court proceeds to examine petitioner's claims, keeping in mind he bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

5

III. DISCUSSION

Barlow asserts that his trial counsel provided ineffective assistance by (1) failing to request a mistrial after the mid-trial discovery of Jackson's and Joseph's exculpatory testimony, and (2) entering into a stipulation with the government regarding the ammunition manufactured by Federal Ammunition. As set forth below, even assuming that petitioner's first claim is not barred for attempting to relitigate a question raised and considered on direct appeal, the Court concludes that petitioner's claims of ineffective assistance of counsel are without merit. With respect to the first *Strickland* requirement, petitioner has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. In any event, even assuming *arguendo* that the first requirement has been met, petitioner has not satisfied the second requirement because, even if counsel had performed the actions petitioner believes he should have, there is no reasonable probability that the result of the proceedings would have been different.

A. Failure to Request a Mistrial

Barlow claims the government violated its *Brady* obligations and that his trial counsel was ineffective for failing to request a mistrial after uncovering the purported *Brady* violations. The government argues that Barlow's claim should be denied because (1) he is barred from re-litigating issues that were raised on direct appeal; and (2) the claim, even if recast as an ineffective assistance of counsel claim, is meritless. The Court agrees with the government.

As the Second Circuit has explained, "[i]t is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)). This rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). However, "[a] claim is not barred from being brought in a § 2255 motion where it rests on a different legal 'ground' for relief than the one previously raised." *Pitcher*, 559 F.3d at 123 (citing *Williams v. United States*, 731 F.2d 138, 141–42 (2d Cir. 1984)); *see also Sanin*, 252 F.3d at 83 (explaining that principles of collateral estoppel prohibit a court from reconsidering issues in a § 2255 petition that were already decided on direct appeal unless "there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal" (citation omitted)). "Ground" means "'a sufficient legal basis for granting the relief sought by the applicant.'" 559 F.3d at 124 (quoting *Sanders v. United States*, 373 U.S. 1, 16 (1963)).

The Second Circuit has not specifically addressed whether a petitioner moving under § 2255 can reargue the substance of claims already addressed on direct appeal by couching them in terms of ineffective assistance of counsel, although, pursuant to *Massaro*, ineffective assistance of counsel claims may be brought in a collateral proceeding whether or not they were raised on direct appeal. In *Slevin v. United States*, 98 Civ. 0904 (PKL), 1999 WL 549010 (S.D.N.Y. July 28, 1999), Judge Leisure held that a "[p]etitioner cannot in a § 2255 motion reargue the substance of claims the Court of Appeals has already rejected simply by introducing those claims with 'Counsel failed to argue that . . . ,'" thereby couching the claims in terms of ineffective assistance of counsel. *Id.* at *3–4. Judge

6

Leisure noted that such claims would fall under the standard articulated by the Second Circuit in *Riascos-Prado v. United States*, 66 F.3d 30, 33, 34 (2d Cir. 1995), where the court partially affirmed the dismissal of a habeas petition where the claim was a "slightly altered rearticulation" of an ineffective assistance of counsel claim that was rejected on direct appeal. 1999 WL 549010, at *3–4; *accord King v. United States*, No. 09 CV 4533(RJD), 2013 WL 530834, at *3 (E.D.N.Y. 2013) (adopting *Slevin* and citing *Riascos—Prado* as support).

The Court agrees with the analysis in *Slevin*. However, in the instant case, the Court notes petitioner was not represented by new counsel on direct appeal, and *Riascos-Prado* recognizes the principle that an ineffective assistance of counsel claim likely would not be made on direct appeal by an attorney who had represented the petitioner at trial based upon that attorney's own incompetence. 66 F.3d at 34. That concern is not present here, because the sum and substance of petitioner's argument in the present motion is copy-and-pasted from his Rule 33 briefing and direct appeal. Thus, Barlow's motion focuses more on the effect of the purported *Brady* violations on his trial, rather than on his attorney's actions and any consequences from his attorney's decision not to move for a mistrial before the verdict. Therefore, the motion is barred to the extent that Barlow is attempting to relitigate the merits of the Court's denial of the Rule 33 motion, a denial affirmed by the Second Circuit in *Barlow II*. *See Pitcher*, 559 F.3d at 123.

However, the Court has assumed *arguendo* that *Slevin* does not apply here and, after carefully examining the merits of Barlow's ineffective assistance of counsel, the Court concludes the claim is completely without merit.

First, petitioner cannot satisfy the first prong of *Strickland* because counsel's performance was objectively reasonable both before and after he discovered the exculpatory testimony. Counsel requested any and all exculpatory or impeachment evidence in a letter to the government on September 8, 2009, including "any witness statements" indicating either that Barlow was not involved in the robbery or that individuals other than Barlow were involved. 732 F. Supp. 2d at 11–12. Counsel also attempted to contact civilian witnesses. *Id.* at 13. He renewed his request for *Brady* material on October 9, 2009, and specifically sought any material relating to the motive for the alleged attempted break-in at 678 Rogers Avenue, Jackson's apartment. *Id.* at 14. On October 12, the day before trial was to begin, counsel made an additional request for *Brady* material and any prior statements of witnesses concerning the other individuals who were arrested near 678 Rogers Avenue on July 16, 2009. *Id.* More importantly, as the record in *Barlow I* demonstrates, counsel, upon learning about Jackson and Joseph, marshaled their testimony, presented those witnesses at trial, and used their testimony to attempt to cast doubt on the government's evidence. *See id.* at 20. Counsel also sought and vigorously argued for a new trial on the basis of the purported *Brady* violations. Therefore, the Court concludes that counsel acted both diligently and reasonably when he discovered the exculpatory evidence during the trial, and chose not to move for an adjournment or mistrial. With respect to the failure to request a mistrial, that decision was objectively reasonable in light of the fact that defense counsel was able to make full use of the evidence during the trial, and such evidence was completely consistent with the defense articulated by counsel throughout the trial.

Second, the Court concludes that Barlow has not shown how his counsel's actions caused him any prejudice. Even if counsel had moved for a mistrial, the motion would have been denied for the reasons set forth in *Barlow I*. Specifically, there was no evidence to support the assertion that the exculpatory information should have been provided prior to trial, because "the government's actions both prior to trial and during the trial [did] not reflect an effort to suppress these witnesses, but rather reflect[ed] a consistent effort to locate these witnesses and subpoena them because the government believed they were potential government witnesses," and it was undisputed that the government immediately conveyed the exculpatory information from its interview with Joseph during the trial to the defense. 732 F. Supp. 2d at 17–18. Further, there was and is no reasonable "probability of a different result if, before trial, the government had disclosed that Jackson and/or Joseph possessed exculpatory information," because, "[f]irst and foremost, . . . both witnesses testified for the defense at trial and all of the exculpatory information from these two witnesses was presented in its entirety to the jury." *Id.* at 20. The Court again concludes that (1) the exculpatory information required no development or investigation, because its exculpatory nature was apparent and the witnesses were immediately available to testify; (2) the exculpatory information was completely consistent with the defense theory of the case to that point—that the gun was seized from someone other than the defendant—and defense counsel was not required to shift or alter his theory of the case at all; and (3) there was no evidence that these witnesses opened the door to other potential exculpatory leads, such as witnesses or documents, which needed to be investigated and presented. *Id.* at 19. Therefore, given the motion would have been denied, counsel's decision to not move for a mistrial cannot be considered prejudicial, especially because he did not waive any *Brady* issues and immediately moved for a new trial on the same grounds after the conviction. *See Greiner*, 417 F.3d at 319 ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" (quoting *Strickland*, 466 U.S. at 690)); *cf. Park W. Galleries, Inc. v. Global Fine Art Registry, LLC*, 732 F. Supp. 2d 727, 754 (E.D. Mich. 2010) ("There is, however, no governing law that requires this Court to find that Plaintiff waived its right to request a new trial because it did not move for a mistrial prior to the jury verdict.").

Accordingly, the Court denies the motion to vacate based on counsel's failure to move for a mistrial before the verdict.

### B. Entering Into the Stipulation

Barlow's second claim is that his lawyer provided ineffective assistance when he stipulated on the interstate commerce element of the offense without consulting with Barlow. Barlow also argues that trial counsel should have required the government to offer specific proof that the ammunition manufactured by Federal Ammunition actually traveled in interstate commerce, and that the stipulation alone is insufficient to meet the government's burden of proof beyond a reasonable doubt. The Court disagrees.

Although "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt," the defendant's guilt of every element charged crime, *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995), a defendant, by entering into a stipulation on an element, waives the right to assert the government's duty to present additional evidence to the jury on that stipulated element, *e.g.*, *United*

8

*States v. Harrison*, 204 F.3d 236, 240 (D.C. Cir. 2000) (citing *United States v. Meade*, 175 F.3d 215, 223 (1st Cir. 1999); *United States v. Melina*, 101 F.3d 567, 572 (8th Cir. 1996); *United States v. Mason*, 85 F.3d 471, 472 (10th Cir. 1996)); *see also United States v. Montilla*, 85 F. App'x 227, 230 (2d Cir. 2003) (rejecting ineffective assistance challenge to trial counsel's stipulation to admission of transcripts of wiretap conversations where defendant did not demonstrate that transcripts contained any errors).

Therefore, the Court concludes that Barlow waived his right to argue that the stipulation is insufficient to prove beyond a reasonable doubt that the ammunition traveled in interstate commerce. *See, e.g.*, *United States v. Muse*, 83 F.3d 672, 679 (4th Cir. 1996). Further, the stipulation, on its face, is not ambiguous. It clearly supports the inference that ammunition manufactured by Federal Ammunition outside of New York necessarily traveled in interstate commerce if it was possessed in New York. Barlow also does not dispute that the jury actually found in favor of the government on all of the essential elements, or argue that the Court improperly directed a partial verdict in the government's favor. *See Hardin*, 139 F.3d at 815–16 (declining to decide whether Hardin's stipulation waived his right to jury determination as to that element, because he did not suggest that district court directed partial verdict in government's favor, and district court recited standard instructions to jury and did not direct verdict).

Thus, the question is whether counsel improperly agreed to the stipulation.[1] The Court concludes that Barlow's claim is without merit because counsel's decision was objectively reasonable, and Barlow cannot show prejudice. As the Court reasoned *supra* and in *Barlow I*, defense counsel's strategy—to argue that the gun came from someone other than Barlow—"was the only sensible strategy under the circumstances." 732 F. Supp. 2d at 20. The strategic decision to stipulate to the evidence regarding the interstate commerce element, and focus on the defense on the evidence linking the defendant to the gun, was sound and objectively reasonable. In any event, Barlow has not shown any prejudice that resulted from the decision to enter the stipulation. Barlow presents no evidence, or even the potential for evidence, that could show that the ammunition at issue was not manufactured outside of New York, and thus that it did not travel in interstate commerce. Therefore, there is no showing, or even suggestion, that the stipulation was factually incorrect. In short, petitioner has not provided any basis to question the admittance of the evidence or counsel's decision to enter into the stipulation, and he has not shown any prejudice resulting from that decision. *See Montilla*, 85 F. App'x at 230; *Ownes v. United States*, Civil File No. 1:13-CV-1780-RWS-JFK, 2013 WL 6800193, at *4 (N.D. Ga. Dec. 20, 2013) ("When a convicted defendant seeks collateral relief, he is presumed guilty, not innocent. The presumptions and the burdens have changed. The movant bears the burden

---

[1] As a threshold matter, the Court notes that Barlow does not argue that he raised any objection to the stipulation to the Court at the time it was read into the record at trial in his presence, even though he claims that defense counsel agreed to it without his knowledge or consent. *See United States v. Robinson*, 617 F.3d 984, 989 (8th Cir. 2010) ("Where the defendant is aware of the stipulation . . . [and does] not object to the stipulation in court, we presume that he has acquiesced in his counsel's stipulation." (alteration in original) (internal quotation marks and citation omitted)). In any event, the Court assumes that Barlow disagreed with the decision to enter the stipulation, and concludes there is no basis for an ineffective assistance claim regarding that decision for the reasons set forth *infra*.

9

of demonstrating ineffective assistance of counsel and establishing his right to relief under § 2255. In order to show prejudice, it was Movant's burden to show that, if there had not been any stipulations, evidence existed that would have been useful to rebut the evidence stipulated to, and Movant has not met that burden." (internal citations omitted)) (concluding that movant could not show prejudice without showing that evidence existed that could have been used to rebut stipulated-to evidence that his DNA was on cigarette found outside cell-phone store, that his pin number was 60959019, and that phones had traveled in interstate commerce).

Accordingly, the Court denies the motion to vacate on this ground.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that petitioner has demonstrated no basis for relief under 28 U.S.C. § 2255. Therefore, the motion to vacate is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 8, 2014
Central Islip, New York

\*\*\*

Petitioner proceeds *pro se*. Respondent is represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, by Amir Toossi, 271 Cadman Plaza East, Brooklyn, NY 11201.